**In re the Disciplinary Matter Involving Michelle V. MINOR, Respondent Attorney.**

No. 7661.

Supreme Court of Alaska.

Sept. 9, 1983.

Richard J. Ray, Eric Ostrovsky, Anchorage, for Alaska Bar Association.

Paul L. Davis, Boyko, Dennis & Davis, and Thomas A. Flippen, Anchorage, for respondent.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

PER CURIAM.

This attorney disciplinary matter is before us pursuant to Alaska Bar Rule II–15(j).[1] In *In re Minor*, 658 P.2d 781 (Alas-

1. Alaska Bar Rule II–15(j) provides, in part, that:

ka 1983), we publicly censured Michelle V. Minor, an attorney licensed to practice law in Alaska, for her failure to cooperate with the Disciplinary Board of the Alaska Bar Association (the "Board") in its investigation of a complaint filed against her. We now consider the underlying substantive complaint. The Board has determined that Minor breached a fiduciary obligation in the course of handling one of her cases. It recommends that Minor be publicly censured for this violation of the Code of Professional Responsibility. The only issue before us is whether this recommended sanction is appropriate.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Minor represented Cynthia Rubits and her husband, Victor Rubits, in a personal injury action arising out of an automobile accident in which Cynthia Rubits was injured. At the time of the accident, Victor Rubits was a member of the United States Air Force. Cynthia Rubits received medical and hospital care from the Air Force. The value of the care received was approximately $1,900.00.

In response to a request by the Air Force, Minor agreed to assert the Air Force's claim for reimbursement of the cost of providing medical care. The assertion of this claim took the form of a "model

allegation" which Minor inserted into Rubits' complaint. The allegation stated:

> Cynthia A. Rubits has received medical and hospital care and treatment furnished by the United States of America. Plaintiff Cynthia A. Rubits, for the sole use and benefit of the United States of America under the provisions of 42 U.S.C. §§ 2651–2653, and with its express consent, asserts a claim for the reasonable value of said care and treatment in the approximate amount of $1,887.70.

Minor agreed with the Air Force that she would not settle the claim of the United States for less than the full amount demanded without obtaining the express approval of the Air Force. In return, the Air Force promised to cooperate with Minor in producing medical records and witnesses.

After the complaint was filed, Minor attempted to convince the Air Force to waive its claim, but was unsuccessful. In a letter to the Air Force dated January 3, 1980, Minor argued that it was not worth the Air Force's time and expense to go to trial. Counsel for the Air Force replied that it could not waive the claim.[2] Throughout this period, the Air Force repeatedly called Minor's office to keep abreast of developments in the case. Without informing representatives of the Air Force, Minor negotiated a settlement for $12,500 on March 3,

---

If the Board has recommended discipline as provided in Rule 12(a), (b) or (c), the Board shall submit the record, which shall include a transcript of all proceedings before the Board, with briefs to be submitted in accordance with Appellate Rule 212.... If neither the Respondent nor the Administrator objects to the conclusions and recommendations of the Board, the submission of briefs may be waived by stipulation, subject to approval by the Court. The Court shall review the record and briefs and enter an appropriate order, which may include a requirement that the Respondent reimburse the Association for reasonable costs and attorney's fees incurred by the Association in connection with the proceedings.

Neither the Respondent nor the Administrator objected to the Board's recommendations, and both sides waived the submission of briefs to this court.

**2.** Minor testified that following this she telephoned Captain Bandy of the Air Force who seemed to be in charge of the Air Force claim and told him, in effect, that she was no longer going to pursue the Air Force's claim. Bandy could not recall this conversation and stated that if it had occurred he would have made a note of it and that he had no such note. The hearing committee found on this point as follows:

> The respondent made no effective attempt to withdraw as counsel for either the Air Force or the Rupitses. The respondent made no effective attempt to clearly inform representatives of the Air Force that she would compromise and settle the lawsuit without continuing to protect their claim for reimbursement. The respondent failed to afford the Air Force effective, reasonable advance notice of her intentions, to enable it to protect its own interests by other means, if any such protection was in fact available to it at that time.

1980. She distributed approximately $7,000 to the Rubits and kept $4,162.50 as attorney's fees. After the settlement, the Air Force inquired into the status of the Rubits' case and was told by Minor's office that the case was still set for trial. When the Air Force did learn of the settlement, and before disbursement of the settlement proceeds, Bandy's superior, Captain Coe, called Minor's office, but was unable to reach her. He left a message with her secretary that the settlement funds should not be distributed until he talked to Minor. This request was not heeded.

When the Air Force eventually learned of the settlement, it filed a complaint with the Alaska Bar Association. After completing an investigation, the Disciplinary Hearing Committee of the Alaska Bar Association ("the Committee") recommended that Minor be given a private reprimand. Counsel for the Alaska Bar appealed this decision to the Board, which reviewed the record and recommended that Minor be publicly censured. The Board stated that it would have recommended suspension except for the Committee's finding that Minor's conduct did not involve "dishonesty, fraud, deceit, or misrepresentation."[3] The Board emphasized that Minor had undertaken a fiduciary obligation on behalf of the Air Force and then breached that obligation. The Board noted that public confidence in the bar is not enhanced when attorneys mishandle and divert other people's money. *See* Code of Professional Responsibility DR 9–102.

## II. DISCIPLINARY SANCTIONS

■ This court is not required to adopt the Board's recommendations. *In re Simpson*, 645 P.2d 1223, 1228 (Alaska 1982). Alaska Bar Rule II–15(j) requires us to independently review the record and briefs filed below to determine whether the recommended sanction is appropriate.[4] Nonetheless, we have consistently held

that factual findings by the Board are entitled to great weight. *In re Evans*, 661 P.2d 171, 175 (Alaska 1983); *In re Simpson*, 645 P.2d at 1226. In this case, the Board did not make its own findings of fact, but instead adopted the findings made by the Committee. Upon our review of the record, we conclude that the Committee's factual findings, as adopted by the Board, are supported by the record. We disagree, however, with the Board's conclusion that public censure is the appropriate sanction here. Based on our independent review, we conclude as a matter of law that Minor's conduct involved dishonesty and misrepresentation. Therefore, we impose suspension as the appropriate sanction.

■ In prescribing the appropriate sanction, each case must be judged on its own facts. *In re Minor*, 658 P.2d at 784. Determination of the sanction to be imposed should be based on a balanced consideration of all relevant factors. "These factors include whether there are mitigating circumstances, what efforts the respondent has made to remedy the problem, and the respondent's prior disciplinary record." *Id.*

The potentially mitigating circumstances in this case are Minor's relative inexperience and the complex and ambiguous nature of the situation in which she placed herself. Minor had only been practicing law for a year when she undertook to represent the Rubits and agreed to include the Air Force's claim in the Rubits' complaint. She had no previous experience with military medical liens. There was testimony before the Committee from another attorney which illustrated the professional dilemma of representing both a personal injury client and her medical care provider. This attorney's clients were in the same auto accident as were the Rubits, and one of them was also treated by the Air Force. Their complaint similarly included a claim on behalf of the United States for reimbursement. In testifying before the Com-

---

**3.** The Code of Professional Responsibility provides that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." DR 1–102.

**4.** *See* note 1 *supra* and *In re Evans*, 661 P.2d 171, 175 (Alaska 1983).

mittee, the attorney stated that he did not apply for a waiver of the Air Force claim until after he had settled the suit. He also stated that he did not consider the Air Force to be his client.

These factors, however, do not mitigate Minor's failure to take effective remedial action once she knew that the Air Force would not waive its claim. Although Minor's situation may have been problematic at first, there was no disagreement by the Committee or the Board that after she became aware of the Air Force's intransigence, she should have taken steps to fulfill her obligations to it. The Committee characterized her relationship with the Air Force as that of an attorney to a client, and concluded that she had engaged in unethical conduct toward her client. The Board, taking a slightly different tack, stressed that whether or not an attorney-client relationship existed, Minor had accepted a fiduciary obligation to the United States. We agree with the Board that when the Air Force demanded an accounting of its portion of the settlement and Minor ignored their repeated requests, she was guilty of more than mere negligence because she withheld or diverted funds which did not rightfully belong to her. Her inexperience and the difficulty of her situation do not excuse her breach of a fiduciary duty. Furthermore, the record does not indicate that Minor has ever reimbursed or attempted to reimburse the Air Force on its claim.

██ Neither the Committee nor the Board indicated that there has been any prior disciplinary action against Minor. Except for the sanction imposed in *In re Minor*, 658 P.2d at 784, it appears that Minor does not have a previous disciplinary record. *In re Minor* involved Minor's failure to respond to Bar Association requests for information about the Air Force's complaint; thus it cannot be properly considered a "prior" violation. Minor did not have any opportunity to reform her behavior between that case and this one; indeed, the facts which gave rise to a disciplinary sanction in *In re Minor* arose *after* the events under scrutiny in this case. There-

fore, despite its serious nature, *In re Minor* does not constitute a prior disciplinary record for the purposes of this review.

The Board's recommendation of public censure reflects an insufficient consideration of the relevant factors involved. Minor's inexperience and the complex nature of the demands upon her are not sufficient to excuse her error in failing to take corrective action once it became clear that she was not released from her obligations to the Air Force. Whether or not she had a duty to the Air Force as its attorney, her duty as a fiduciary was clear. We have held that an attorney who receives money on behalf of another becomes a fiduciary to that person in the absence of an agreement to the contrary. If the money is converted by the attorney, there is a breach of fiduciary duty. *In re Cornelius*, 520 P.2d 76, 85 (Alaska 1974).

██ We agree with the Board that because Minor asserted a claim on behalf of the United States, part of the settlement she received should have been held in trust for the Air Force. Failing to do so was a diversion of funds. In *Cornelius*, the sanction imposed for similar conduct was suspension from practice for four months on one count and forty-two months on another. 520 P.2d at 86. The Board did not recommend that Minor be suspended, but we believe that such a sanction is warranted.

The Board declined to recommend suspension because the Committee specifically found that Minor's conduct did not involve "dishonesty, fraud, deceit or misrepresentation." Although we accord great weight to the Committee's factual findings, as adopted by the Board, we cannot agree with their interpretation of the events in this case.

Regardless of the conflict which Minor may have perceived in representing two apparently adverse interests, she had an obligation to share the settlement proceeds with the Air Force. We find as a matter of law that the Committee's conclusions are erroneous, and that Minor's conduct was dishonest. It is not disputed that she failed

to inform the Air Force of the settlement and then her office misrepresented her actions. Accordingly, we hold that the appropriate sanction is to suspend Minor from the practice of law for ninety days. In addition, as a precondition to reinstatement to the bar, she is required to pay the Air Force the portion of the Rubits' settlement to which it is entitled.

IT IS ORDERED:

Michelle V. Minor's license to engage in the practice of law in Alaska is suspended for ninety days.[5] Her reinstatement is conditioned upon a showing that she has made full restitution of all amounts owed to the Air Force.

5. The Board may prescribe the date upon which      suspension will commence.