Joaquim V. AGOSTINHO, Appellant,

v.

FAIRBANKS CLINIC PARTNERSHIP, an Alaskan Partnership, and Denali Medical Services, Inc., an Alaskan Corporation, d/b/a Fairbanks Clinic, Appellees.

No. S–3724.

Supreme Court of Alaska.

July 19, 1991.

Rehearing Denied Aug. 23, 1991.

Joseph L. Paskvan, Hoppner & Paskvan, P.C., Fairbanks, for appellant.

Marcus C. Clapp and David F. Leonard, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This appeal concerns the admissibility of evidence of remedial repairs. The trial court granted a protective order barring admission of the appellant's evidence pursuant to Alaska Evidence Rule 407. We conclude that the trial court could not properly determine the admissibility of the evidence without holding a pre-trial evidentiary hearing to determine whether it fell within an exception to Rule 407. We therefore reverse and remand the matter to the trial court for a new trial.

## I. FACTS AND PROCEEDINGS

Joaquim V. Agostinho slipped and fell on a walkway outside of the Fairbanks Clinic Partnership (the "Clinic") on November 11,

1986. On April 6, 1988, he filed suit against the Clinic alleging that the icy condition of the Clinic walkway caused his accident.

The Clinic anticipated that Agostinho would seek to introduce evidence that David Hansen, the maintenance person responsible for removing ice and snow from Clinic walkways, spread sand or salt on the entranceways of the Clinic shortly after being notified of Agostinho's accident. Therefore, the Clinic filed a Motion for a Protective Order, which the trial court granted over Agostinho's objection.

During the trial, Hansen testified that on the morning of November 11, 1986, he checked the four walkways leading to the Clinic. Because they appeared to be free from ice, he did not put down anything to treat them. Hansen also stated that he checked the pathway following Agostinho's fall and "didn't see any problem." Agostinho's counsel requested permission to cross-examine Hansen about the subsequent salting and sanding. The trial court again refused to allow Agostinho to introduce evidence of Hansen's remedial repairs.

The jury returned a verdict in favor of the Clinic on September 21, 1989. On October 2, 1989, Agostinho moved for a new trial on the basis that exclusion of evidence of the Clinic's remedial repairs was a prejudicial error. The superior court denied his motion and this appeal was filed.

## II. ALASKA EVIDENCE RULE 407

Hansen's efforts to clean ice from the sidewalk following Agostinho's accident, were remedial repairs. Consequently, Agostinho's request to cross-examine Hansen regarding those actions is governed by Alaska Evidence Rule 407.[1]

---

1. Alaska Rule of Evidence 407 provides:
   *Subsequent Remedial Measures.* When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with

the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as impeachment or, if controverted, proving ownership, control, feasibility of precautionary measures, or defective condition in a products liability action.

Although Rule 407 excludes evidence of subsequent remedial measures if offered to prove negligence, it expressly does not require exclusion of such evidence if it is offered for another purpose. Weinstein and Berger, 2 *Weinstein's Evidence,* ¶ 407[05] (1990). Agostinho argues that Hansen's actions implicitly contradict his statement that he examined the walkways immediately after the accident and confirmed that they were not icy. Therefore, Agostinho claims evidence of the repairs was admissible to impeach Hansen's credibility and that the trial court abused its discretion by excluding the evidence.[2]

The Clinic objects to introduction of the subsequent remedial measures of salting and sanding on the grounds that the evidence before the court is inadequate to impeach Hansen. It contends that, absent a showing as to when sanding and salting occurred, this court must conclude that the subsequent salting was unrelated to the condition of the Clinic's walkways at the time Agostinho fell.[3]

It is an abuse of discretion to exclude evidence which will genuinely impeach a witness, particularly with respect to statements regarding central facts of the dispute. *See, e.g., Anderson v. Malloy,* 700 F.2d 1208 (8th Cir.1983); *Patrick v. South Central Bell Tel. Co.,* 641 F.2d 1192, 1196–97 (6th Cir.1980); *Runkle v. Burlington Northern,* 188 Mont. 286, 613 P.2d 982 (1980).[4] Nevertheless, when the evidence which is offered for the stated purpose of impeachment in fact "reflects on the witness only by means of a prohibited inference of negligence from the subsequent remedial measures," evidence of remedial repairs will not be allowed. Weinstein and Berger, 2 *Weinstein's Evidence,* ¶ 407[05], at 407–35 (1990); *see, e.g., Bickerstaff v. South Central Bell Tel. Co.,* 676 F.2d 163 (5th Cir.1982). Thus, upon determining that the offered evidence "genuinely impeaches" the witness, the court must next determine whether the impeachment value outweighs the prejudicial implication of negligence. Alaska Evidence Rule 403.

The evidence appears to have genuine impeachment value; evidence that Hansen salted and sanded the walks following Agostinho's fall implicitly impeaches his testimony that the walks did not appear to be icy when Agostinho fell. Furthermore, the evidence pertains to an essential fact in the case. However, upon the record before us, we are unable to weigh whether the prejudicial effect of the evidence would outweigh its impeachment value. It is unclear precisely when and where the Clinic undertook ice removal measures following Agostinho's accident. This information is a prerequisite to a final determination of whether the evidence has genuine impeachment value. In addition, since evidence of subsequent remedial repairs is inherently prejudicial, the court must have sufficient knowledge of the substance of the evidence to intelligently weigh its impeachment value against this prejudicial effect.

---

**2.** A trial court's decision regarding admissibility of evidence is reviewed for abuse of discretion. *Hutchins v. Schwartz,* 724 P.2d 1194, 1197 (Alaska 1986). Abuse of discretion will be found when the supreme court is "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Dura Corp. v. Harned,* 703 P.2d 396, 402 (Alaska 1985).

**3.** The Clinic alternatively maintains that, even if the evidence was admissible, excluding it was harmless error because the jury had before it other information which suggested the walkways may have been icy or slippery.

We disagree. Although evidence was presented concerning temperature on the day of the accident, and ice formations which tended to occur on Clinic walkways, such facts are clearly peripheral or tangential as compared to when, where, and why subsequent salting and sanding was needed on the walkways after the accident. The reliability of Hansen's testimony that the walkways appeared ice free at the time of the accident was a critical issue in the case. Thus, exclusion of otherwise relevant evidence concerning this issue cannot be harmless error. *See Adkins v. Lester,* 530 P.2d 11, 18 (Alaska 1974) ("an error is not harmless unless we can say with fair assurance, after stripping the erroneous action from the entire evidence, that the jury was not substantially swayed or affected by the error").

**4.** Alaska Evidence Rule 407 is modeled on Federal Rule of Evidence 407. Thus, although these authorities address the federal rule we find their analysis applicable to the state rule as well.

■ Ordinarily, a party waives its right to challenge the exclusion of evidence unless an offer of proof as to the substance of the evidence is made at the time the evidence is excluded. *See* Alaska Evidence Rule 103. Thus, under most circumstances, Agostinho's failure to put evidence in the record which would allow us to determine the impeachment value of the subsequent remedial repair would preclude us from finding an abuse of discretion. However, here the trial court had previously granted a protective order forbidding the admission of evidence relating to the Clinic's subsequent salting and sanding. Thus, the court's ruling at trial was based on its previous decision to disallow the evidence. In this situation, we find it appropriate to look to the protective order rather than events occurring at trial to determine whether the trial court could properly forbid admission of the evidence.

■ It is apparent from the record of the trial court proceedings that the court granted the pretrial protective order without the benefit of any more information concerning the substance of the evidence than is present in the record on appeal. We find this to be an abuse of discretion. The court could not have properly balanced the value of the offered evidence against its prejudicial effect on the record before it; a pre-trial evidentiary hearing was necessary to enable it to determine whether the evidence fell within an exception to Rule 407. On this basis, we hold that the trial court likewise abused its discretion by denying Agostinho's motion for a new trial.[5]

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

5. Depending on the substance of Agostinho's evidence, it may also be admissible under Rule 407 to establish the condition of the premises at the time of the accident, or possibly for some other purpose. Weinstein and Berger, 2 *Weinstein's Evidence*, ¶ 407[05] at p. 407–33 (1990) (when a dispute as to the condition at the time of the accident exists, then evidence of remedial

measures may be admissible, not just for impeachment, but also as affirmative proof to rebut the defendant's claims).

The trial court can address this matter as well as the impeachment value of the evidence at a pre-trial evidentiary hearing or at a new trial by requiring an offer of proof under the guidelines set forth in this opinion.