[S.F. No. 24801. May 2, 1985.]

KENNETH W. SMITH, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

528

COUNSEL

Daniel Drapiewski for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Marlene Adams for Respondent.

OPINION

**THE COURT.**—The review department of the State Bar Court has unanimously recommended that petitioner Kenneth W. Smith be suspended from the practice of law for a period of 180 days and that execution of that order be stayed upon certain conditions including 30 days actual suspension and a one-year probation period with restitution and passage of the Professional Responsibility Examination. This court adopts the review department's recommendation.

## I.

Petitioner was admitted to the practice of law on June 27, 1975. He has no prior disciplinary record.

On May 17, 1983, petitioner was charged with violating Business and Professions Code sections 6067[1] and 6103,[2] and rules 6-101(2)[3] and 2-111(A)(2)[4] of the Rules of Professional Conduct, arising out of his representation of Mr. Terry S. in a dissolution proceeding. Before describing the alleged misconduct, it is necessary to address two preliminary issues raised by petitioner.

First, petitioner seeks to be relieved from the effect of a stipulation. Prior to the disciplinary hearing, petitioner and the State Bar examiner met for a settlement conference. They discussed and tentatively agreed on a stipulation as to facts, legal conclusions and discipline. A draft of the stipulation was prepared by the examiner and mailed to petitioner approximately 20 days before the hearing. However, petitioner did not sign and return it.

The hearing panel convened on October 28, 1983. Over the objections of the State Bar examiner, petitioner asked if he could orally agree to the proposed stipulation. His request was initially denied, and the examiner proceeded to present an opening argument and the testimony of Terry S. Subsequently, the examiner and the hearing panel allowed the stipulation, which was read into the record. It included admissions of facts and culpability with regard to both the Terry S. matter and a separate case, the Willard H. matter, which was in the preinvestigation stage at the State Bar. Petitioner then made a statement of mitigating circumstances and the examiner made a statement regarding aggravating circumstances.

The proposed recommended discipline included in the stipulation was read into the record. The stipulation called for petitioner to be suspended from the practice of law for 30 days with execution stayed upon conditions which included no actual suspension, one year of probation and restitution to Terry S. and Willard H.

---

[1]Section 6067 requires every attorney upon admission to practice in this state to take an oath "faithfully to discharge the duties of any attorney at law to the best of his knowledge and ability. . . ."

[2]Section 6103 provides in pertinent part that "any violation of the oath taken by [an attorney], or of his duties as such attorney, constitute[s] cause[] for disbarment or suspension."

[3]Rule 6-101 provides that "[a] member of the State Bar shall not willfully or habitually . . . (2) Fail to use reasonable diligence and his best judgement in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed. . . ."

[4]Rule 2-111(A)(2) provides that ". . . a member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

After conferring, the hearing panel announced that it would adopt the stipulation as to findings of fact and conclusions of law, but recommend increasing the discipline to include a 180-day suspension with 30 days of actual suspension.

Sometime in January of 1984, after the hearing but before the hearing panel filed its written decision, petitioner was informed that another complaint against him had been filed with the State Bar in September of 1983 and was under investigation. This complaint will be referred to as the Arlene B. matter.

The hearing panel filed its decision on January 30, 1984. It was served on petitioner on February 10th. Neither petitioner nor the examiner filed a request for review with the review department. The recommendations of the hearing panel were forwarded to the review department for ex parte review pursuant to rule 450(b) of the Rules of Procedure of the State Bar [hereafter Rules of Procedure]. On May 10, 1984, the review department adopted the hearing panel's decision.

After the review department reached its decision, but before the decision was filed or served on petitioner, petitioner's counsel allegedly submitted a letter to the review department requesting a stay of the proceedings pending consolidation with the Arlene B. matter. The request was evidently denied.[5] The review department filed its decision on July 6, 1984, and it was served on petitioner on August 1st.

 Petitioner makes several arguments in support of his contention that he should not be bound by the stipulation. First, he argues that "fundamental concepts of fairness and due process" require that the stipulation be set aside since it is "based on a material, excusable mistake of fact." The asserted mistake of fact is that at the time petitioner entered the stipulation, he was unaware of the Arlene B. matter. His purpose in entering the stipulation was to dispose of all matters pending before the State Bar regarding his conduct. He claims that the stipulation is of no worth to him because it leaves the Arlene B. matter unresolved.

Petitioner cites *People* v. *Superior Court (Giron)* (1974) 11 Cal.3d 793 [114 Cal.Rptr. 596, 523 P.2d 636], in which this court affirmed a trial court's decision to allow a criminal defendant to withdraw a guilty plea

---

[5]The record includes no evidence of this letter. Petitioner claims in his brief that he made the request, and that it was denied by the review department. In its brief, counsel for the State Bar acknowledges the existence of such a letter. The State Bar's description of the timing of the letter, its contents, and of the review department's disposition coincides with that of petitioner.

because the defendant had not realized that the guilty plea would subject him to deportation. Petitioner's situation is a far cry from that of the defendant in *Giron*. He is not a criminal defendant. Nor is the potential collateral consequence of his stipulation comparable to deportation. At most, it will affect the record of prior discipline which will be considered if he is found culpable for misconduct in the Arlene B. matter or some later disciplinary proceeding.

■ While State Bar disciplinary proceedings have sometimes been denominated "quasi-criminal" in nature (*Giddens* v. *State Bar* (1981) 28 Cal.3d 730, 734 [170 Cal.Rptr. 812, 621 P.2d 851], citing *In re Ruffalo* (1968) 390 U.S. 544, 551 [20 L.Ed.2d 117, 122, 88 S.Ct. 1222]), the rules of criminal procedure do not apply. (*Giddens* v. *State Bar, supra,* 28 Cal.3d at p. 734.) Instead, this court has utilized its "inherent supervisory powers" to apply procedural rules which will guarantee a "fair hearing." (*Ibid.*)
■ Petitioner has not demonstrated that he was denied a fair hearing simply because he voluntarily entered into a stipulation without knowledge of another complaint which had been filed against him.[6]

In addition, petitioner failed to make a timely request for withdrawal or modification of the stipulation. Petitioner was informed of the Arlene B. matter in January of 1984. The hearing panel issued its decision in this matter on January 30, and it was served on petitioner on February 10. Rule 408(a) of the Rules of Procedure allows a request for withdrawal or modification of a stipulation to be made within 15 days of service of the order of the hearing panel approving the stipulation. Petitioner filed no such request.

Nor did petitioner avail himself of other possible avenues of relief provided for in the Rules of Procedure. Rule 562 permits a motion for de novo hearing within 10 days after the hearing panel decision is served. Petitioner made no such motion. Rule 450(a) allows the filing of a request for review by the review department within 15 days after service of the hearing panel's decision. Petitioner filed no request for review.

Even in his letter to the review department, sent three and one-half months after service of the hearing panel decision and approximately five months after petitioner learned of the Arlene B. investigation, petitioner did not request that the stipulation be set aside. Instead, he requested a stay of the proceedings.

---

[6]Compare *Giddens* v. *State Bar, supra,* 28 Cal.3d 730, in which this court remanded the cause for a new disciplinary hearing. In that case, the recommended discipline was disbarment, the petitioner had been prevented from attending the hearing because of his incarceration in another state, and he was not represented by counsel.

Petitioner first requested to be relieved of the stipulation in his petition for writ of review in this court. He has presented no persuasive argument why this untimely request should be granted.

Petitioner next argues that the stipulation should be set aside for failure to comply with rule 406 of the Rules of Procedure. This argument is also without merit. Rule 406 provides, in pertinent part, that a proposed stipulation as to facts and discipline "shall set forth each of the following: . . . [¶] (vi) the disposition to be made of other pending investigations or formal proceedings . . . ." At the time the stipulation was entered into, it is clear that neither petitioner nor the State Bar examiner was aware of the Arlene B. matter. A stipulation cannot be expected to include information which is not yet known to either party.[7] However, petitioner *was* aware of the pending investigation at the time the hearing panel rendered its decision. At that time, he could have taken steps to withdraw or modify the stipulation. He failed to do so.

Next, petitioner argues that the stipulation should be set aside because the hearing panel did not accept the stipulated discipline. Petitioner asserts that this was a violation of rule 408(b) of the Rules of Procedure, which provides that "[i]f the . . . hearing panel . . . rejects a stipulation as to facts and disposition, the parties shall be relieved of all effects of the stipulation and the proceeding or investigation shall resume before another referee or hearing panel . . . ." However, the stipulation itself included the following paragraph: "It is understood by the Parties that this stipulation to proposed discipline is not binding upon this panel, upon the review department, or the Supreme Court of the State of California." The panel did not violate the terms of the stipulation since the stipulation itself provided for modification of the discipline.

In addition, after the stipulation had been read into the record and the statements in mitigation and aggravation had been made, the principal referee announced that the panel was taking a recess "to confer as to the

---

[7]Petitioner argues that information about the complaint was available to the State Bar, since the complaint was evidently received in the State Bar office on September 6, 1983. The State Bar argues that petitioner was in a better position than the examiner to know of other possible transgressions which might give rise to complaints. Both parties agree that neither petitioner nor the State Bar examiner had actual knowledge of the Arlene B. matter at the time of petitioner's hearing in this matter.

Although petitioner's argument is unavailing here, the State Bar is strongly encouraged to inform an attorney that other complaints have been received before the attorney enters into stipulations which he or she might expect will dispose of all pending disciplinary matters. It is not unreasonable to expect the State Bar to keep a central record of all complaints lodged against an attorney. The release of information regarding complaints, pending investigations or formal proceedings is, of course, subject to the confidentiality provisions of rules 220-228 of the Rules of Procedure.

discipline." After the recess, the referee announced that the hearing panel had adopted the stipulation's findings, facts, and conclusions of law, but had increased the recommended discipline. She asked if there were further comments, stipulations or additions. Petitioner did not respond, and the hearing was adjourned. Thus, petitioner was advised that the hearing panel was considering increasing the recommended discipline, and was informed at the hearing that it had done so. He made no objection then or at any time prior to his petition to this court.

Petitioner also argues that the stipulation was not binding until it was adopted by the review department, and that he made efforts to be relieved of the stipulation before the review department issued its decision. He insists that the review department's failure to entertain his "motion" to set aside the stipulation denied him the rights guaranteed by rule 408(a) of the Rules of Procedure.

Rule 408(a) provides that "[n]o stipulation as to facts . . . shall be effective until approved by a referee or hearing panel . . . . Once approved by the referee or hearing panel, and adopted by the review department, a stipulation as to facts and disposition shall bind the parties in the proceeding or investigation. *Once approved, the stipulation may not be withdrawn or modified without the written approval, upon good cause shown and notice duly given,* of the referee or hearing panel having approved the stipulation or, of the presiding referee. Any request for a withdrawal or modification of the stipulation must be served and filed *within fifteen (15) days of service of the order approving the stipulation.*" (Italics added.)

According to petitioner's interpretation of rule 408(a), he was not required to request withdrawal or modification of the stipulation within 15 days after the hearing department *approved* it but rather within 15 days after the review department *adopted* it. He argues that the 15-day period begins to run only upon adoption of a stipulation by the review department because the stipulation is not binding until that time. This interpretation is not convincing. The rule provides that any request for withdrawal of a stipulation must be made within 15 days "of service of the order *approving* the stipulation." (Italics added.) Throughout the rule, when acceptance of a stipulation is addressed, the term "approve" is used consistently to refer to the actions of the hearing panel and the term "adopt" to refer to the actions of the review department.

Moreover, even if petitioner's interpretation were correct, his argument would still be untenable. The fact is that petitioner never made a "motion" or request to set aside the stipulation. Although the letter to the review department is not in the record, petitioner has alleged only that it contained

a request for a stay of the proceedings until this matter could be consolidated with the Arlene B. matter. Petitioner has offered no evidence that he attempted to be relieved of the stipulation until his petition to this court.

"The use of stipulations is authorized and encouraged by . . . the Rules of Procedure of the State Bar []. They obviate the necessity of formal proof and are conclusive as to the truth of the facts contained therein unless the [hearing panel] or the [review department] relieves a party of their effect. [Citations.] Petitioner has not requested or obtained such relief and is therefore bound by his admission." (*In re Duggan* (1976) 17 Cal.3d 416, 422 [130 Cal.Rptr. 715, 551 P.2d 19]; see also *Sanchez* v. *State Bar* (1976) 18 Cal.3d 280, 284 [133 Cal.Rptr. 768, 555 P.2d 889].)

This court has relieved an attorney of certain stipulations when it was considering the imposition of sanctions more severe than those recommended by the State Bar. (*Wells* v. *State Bar* (1984) 36 Cal.3d 199, 207-208 [203 Cal.Rptr. 134, 680 P.2d 1093]; *Inniss* v. *State Bar* (1978) 20 Cal.3d 552, 555 [143 Cal.Rptr. 408, 573 P.2d 852].) However, even then the attorney was not relieved from *factual* stipulations, but only from the *legal conclusions* to which he had agreed. (*Inniss, supra,* 20 Cal.3d at p. 554-555; see also *Wells* v. *State Bar, supra,* 36 Cal.3d at p. 207; *Finch* v. *State Bar* (1981) 28 Cal.3d 659, 662 [170 Cal.Rptr. 629, 621 P.2d 253]; *Olguin* v. *State Bar* (1980) 28 Cal.3d 195, 197 [167 Cal.Rptr. 876, 616 P.2d 858].)

The rationale for the rule that an attorney will not be relieved of factual stipulations has been that the stipulation procedure would serve little or no purpose if further evidentiary hearings were required "whenever the attorney deems it advisable to challenge the factual recitals." (*Inniss, supra,* 20 Cal.3d at p. 555.) However, when this court is considering harsher discipline "fundamental fairness seems to require us to relieve an attorney from the *legal conclusions* to which he may have agreed solely because the recommended punishment seemed to him fair and reasonable." (*Ibid.*)

The *Inniss* rule is of no assistance to petitioner. This court is not considering discipline greater than that recommended by the State Bar. Petitioner was made aware of the hearing panel's recommended discipline at the time of his hearing. He made no effort to repudiate the stipulation at that time, nor did he do so before the review department. Petitioner has presented no convincing reason why he should be allowed to do so now.

Petitioner also renews his request that this matter be consolidated with the pending Arlene B. matter. He argues that consolidation will cause no prejudice to the State Bar, but that if it is not permitted he will be forced to "incur the expense . . . , loss of time and [] substantial risks [which]

attend the piecemeal resolution of claims." The State Bar argues that it would not be in the public interest to consolidate the claims, because the resulting delay would postpone petitioner's discipline, including restitution to clients and institution of a probation monitor.

It is clear that it would have been *permissible* to consolidate the proceedings against petitioner. Rule 262 of the Rules of Procedure provides in relevant part that "[w]hen two or more formal proceedings involve the same member . . . the presiding referee . . . [of the] Hearing Department *may* order them consolidated, if no substantial rights will be prejudiced." (Italics added.) However, there is no mandatory consolidation provision, and it is apparently common for disciplinary matters involving the same member to be handled independently. (See, e.g., *Ambrose* v. *State Bar* (1982) 31 Cal.3d 184, 186 [181 Cal.Rptr. 903, 643 P.2d 486]; *Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73, 78 [141 Cal.Rptr. 169, 569 P.2d 763]; *Cutler* v. *State Bar* (1969) 71 Cal.2d 241, 243 [78 Cal.Rptr. 172, 455 P.2d 108].)

The hearing panel could not have consolidated the matters, since neither the panel nor the parties were aware of the existence of the Arlene B. matter. Nor was it improper for the review department to deny petitioner's request to stay this proceeding and consolidate it with the Arlene B. matter. The review department had already considered and adopted the hearing panel recommendation, while the Arlene B. matter was still in the investigation stage. Consolidation at that time would have been wasteful of review department resources. In addition, since petitioner did not request relief from the stipulation, there would have been no reason to re-examine any of the findings contained in the review department decision in a consolidated proceeding.

While this court may "exercise [it's] prerogative to consider the [separate] proceedings contemporaneously" (*Fitzpatrick* v. *State Bar, supra,* 20 Cal.3d at p. 78; *Silver* v. *State Bar* (1974) 13 Cal.3d 134, 137 [117 Cal.Rptr. 821, 528 P.2d 1157]), no authority can be found which *requires* such consolidation.

In *Ambrose* v. *State Bar, supra,* 31 Cal.3d 184, this court considered it "especially appropriate" to consider together two matters which had been argued separately before the State Bar because, although the matters had been initiated at different times, they both involved misappropriation of the same client's funds. (*Id.,* at p. 186, fn. 1.) In many other cases, this court has consolidated separate matters involving the same attorney, but has done so without explanation. (See, e.g., *In re Duggan, supra,* 17 Cal.3d 416; *Gordon* v. *State Bar* (1982) 31 Cal.3d 748 [183 Cal.Rptr. 861, 647 P.2d

137]; *Warner* v. *State Bar* (1983) 34 Cal.3d 36 [192 Cal.Rptr. 244, 664 P.2d 148].)

It appears that this court has consolidated matters where there were already final disciplinary recommendations from the State Bar. Petitioner cites no cases, and none have been found, in which this court stayed its review of a disciplinary recommendation pending the State Bar's resolution of an independent disciplinary matter. The Arlene B. matter has evidently not yet reached the disciplinary hearing stage, while the review department has made its final recommendation of discipline in this proceeding. Since this court has determined that petitioner is not entitled to be relieved of the stipulation upon which the State Bar's recommendation is based, it is in the public interest for this court to avoid delay and resolve the matter now.

## II.

Petitioner stipulated to the following facts and conclusions of law.

### THE TERRY S. MATTER

In January of 1981, petitioner was retained to represent Terry S. in a dissolution proceeding. Petitioner was paid $750 as an advance on fees. On November 4, 1981, petitioner appeared with his client pursuant to an order to show cause, and stipulated to $400 per month child support and $1,600 per month spousal support. Petitioner advised Terry S. that the spousal support order would only be in effect for 90 days. In fact, there was no such 90-day limit on the spousal support order. Relying on petitioner's advice, Terry S. paid $1,600 per month spousal support for three months and then discontinued the payments.

On or about March 24, 1982, petitioner telephoned Terry S., who was out of town, and left a message that he would be appearing in court the next day on his behalf. He did not specify the reason for the appearance, although he knew that opposing counsel had filed an order to show cause regarding contempt for Terry S.'s failure to continue to pay spousal support.

At the hearing, Terry S. was not found in contempt, but was ordered to pay arrearages. Petitioner did not inform his client of the order, nor did he take any steps to insure that Terry S. complied.

On May 18, 1982, Terry S. was informed by his employer's personnel department that a writ of execution had been received for $2,217 for non-payment of spousal support. On approximately the same date, Terry S. was served with another order to show cause regarding contempt.

Terry S. immediately called petitioner concerning the wage attachment and the order to show cause. Petitioner failed to return his phone calls, or to take any further steps to assist his client or to protect his interests.

Petitioner stipulated, and the State Bar found, that by his actions in the Terry S. matter petitioner wilfully and intentionally violated sections 6067 and 6103 of the Business and Professions Code, and violated rules 2-111(A)(2) and 6-101(2) of the Rules of Professional Conduct.[8]

### THE WILLARD H. MATTER

In October 1982, petitioner was retained by Willard H. to prepare a simple will. Petitioner was paid $170 as an advance on fees.

Petitioner failed to draft the will or to respond to Willard H.'s efforts to communicate with him. Petitioner did not refund any part of the $170 or promptly return his client's papers or documents.

Petitioner stipulated that by his actions in the Willard H. matter he wilfully and intentionally violated sections 6067, 6068, subdivision (a) and 6103 of the Business and Professions Code,[9] and rules 2-111(A)(2), 2-111(A)(3) and 6-101(2) of the Rules of Professional Conduct.[10]

### III.

"This court must decide independently whether the hearing panel's findings are supported by the evidence." (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 11 [206 Cal.Rptr. 373, 686 P.2d 1177], cert. den., — U.S. — [84 L.Ed.2d 386, 105 Ed.2d 386, 105 S.Ct. 1366].) However, "petitioner bears the burden of demonstrating that the findings of the State Bar are not supported by the evidence. [Citations.] 'In meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty.' [Citations.]" (*Id.*, at p. 12.) Petitioner stipulated to the facts and conclusions of law. Since petitioner must be bound by his stipulation, he has not met the burden

---

[8]For the pertinent parts of sections 6067 and 6103 and rules 2-111(A)(2) and 6-101(2), see *ante*, footnotes 1-4.

[9]For the pertinent parts of sections 6067 and 6103, see *ante*, footnotes 1 and 2, respectively. Section 6068 provides: "[i]t is the duty of an attorney: [¶] (a) To support the Constitution and laws of the United States and of this State."

[10]For the pertinent parts of rules 6-101(2) and 2-111(A)(2), see *ante*, footnotes 3 and 4, respectively. Rule 2-111(A)(3) provides in part that "[a] member of the State Bar who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned. []"

of demonstrating that the State Bar's findings are not supported by the evidence.

The State Bar has recommended that petitioner be suspended from the practice of law for 180 days. It has further recommended that execution of the suspension be stayed on certain conditions, including 30 days actual suspension, one year of probation, restitution to Terry S. and Willard H. and passage of the Professional Responsibility Examination.

 Petitioner argues that the recommended discipline is excessive. While it is ultimately the responsibility of this court to determine the degree of discipline to be imposed, the review department's recommendation is entitled to great weight. (*In re Duggan, supra,* 17 Cal.3d at p. 423; see also *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82].) " 'Determination of discipline turns upon several considerations, including the protection of the public, the promotion of confidence in the legal profession, and the maintenance of professional standards.' [Citation.] Petitioner bears the burden of demonstrating that, with due consideration to these objectives, the recommendation of the State Bar is erroneous. [Citation.]" (*McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 84 [196 Cal.Rptr. 841, 672 P.2d 431], cert. den., 466 U.S. 958 [80 L.Ed.2d 553, 104 S.Ct. 2170].)

Clearly, petitioner's misconduct warrants discipline. In both the Terry S. matter and the Willard H. matter, petitioner stipulated that he failed to perform tasks for which he had been employed and failed to communicate with his clients. "[T]he wilful failure to perform legal services for which an attorney has been retained . . . warrants disciplinary action, [as it] constitut[es] a breach of the good faith and fiduciary duty owed by the attorney to his clients." (*Finch* v. *State Bar, supra,* 28 Cal.3d at p. 665; accord *McMorris* v. *State Bar, supra,* 35 Cal.3d at p. 85; *Gordon* v. *State Bar, supra,* 31 Cal.3d at p. 757-758;. *Lester* v. *State Bar* (1976) 17 Cal.3d 547, 551 [131 Cal.Rptr. 225, 551 P.2d 841].)

Similarly, " '[f]ailure to communicate with, and inattention to the needs of, a client are proper grounds for discipline.' " (*Chefsky* v. *State Bar, supra,* 36 Cal.3d at p. 127; see also *Wells* v. *State Bar, supra,* 36 Cal.3d at p. 205; *Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937].)[11]

---

[11]Where such conduct is "habitual," severe discipline has been imposed. (*Finch* v. *State Bar, supra,* 28 Cal.3d at p. 665; and see, e.g., cases cited in *McMorris* v. *State Bar, supra,* 35 Cal.3d at p. 85, in which the penalty was disbarment.) There is no evidence to support a finding that petitioner's conduct was "habitual."

■ "In deciding appropriate discipline, [this court must] consider relevant aggravating and mitigating circumstances as well as the underlying misconduct." (*Warner* v. *State Bar, supra,* 34 Cal.3d at p. 43.) In mitigation, petitioner testified that his conduct in the Terry S. matter was contemporaneous with the breakup of his 16-year marriage and a financial crisis in his law practice. After he separated from his wife he "almost never went to [his] office, never returned messages or communicated with most of [his] clients, and, in effect, dropped out for about four or five months while [he] was trying to get his life in order."

He also explained that he has always had a problem with "procrastination," but that he has received psychiatric treatment for that problem. Now that his financial situation has improved, he states that he will return to psychiatric treatment. He also claims to have been more diligent in his practice recently and to have hired a part-time secretary who can perform many office tasks which he formerly tried to handle himself.

The hearing panel found, and the review department adopted, the following as mitigating circumstances: "1. [Petitioner] has no prior disciplinary record; [¶] 2. During the time that the acts of misconduct occurred [petitioner] was experiencing serious personal problems and marital difficulties which led to the dissolution of his marriage; [¶] 3. [Petitioner] was also subject to severe financial pressures which aggravated his personal and domestic problems; and [¶] 4. [Petitioner] is currently obtaining professional psychiatric help for his personal and emotional problems." These mitigating factors were properly considered in the determination of the recommended discipline. They do not support a reduction of the discipline by this court.

The lack of a prior disciplinary record can be an appropriate consideration in determining discipline. (*Smith* v. *State Bar* (1984) 37 Cal.3d 17, 25 [206 Cal.Rptr. 545, 687 P.2d 259].) However, it is not a strong mitigating factor in this case, since petitioner had been in practice only six years at the time of the misconduct. (Cf. *In re Jones* (1971) 5 Cal.3d 390, 400 [96 Cal.Rptr. 448, 487 P.2d 1016] [no prior disciplinary record after 35 years in practice].)

Personal and financial problems such as those experienced by petitioner are also properly considered in mitigation. (See *Gordon* v. *State Bar, supra,* 31 Cal.3d at p. 758; *In re Arnoff* (1978) 22 Cal.3d 740, 747 [150 Cal.Rptr. 479, 586 P.2d 960]; *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].) However, even in the face of serious personal problems, an attorney has a professional responsibility to fulfill his duties to his clients or to make appropriate arrangements to protect his clients' interests. While this court may be sympathetic to petitioner's per-

sonal difficulties, the "primary concern must be the fulfillment of proper professional standards[.]" (*In re Duggan, supra,* 17 Cal.3d at p. 423.)

"It is well established that the purpose of State Bar proceedings is not punitive but protective of the public, thereby preserving its confidence in the legal profession." (*Warner* v. *State Bar, supra,* 34 Cal.3d at p. 43.) Petitioner's testimony that he "never . . . communicated with most of [his] clients . . . for about four or five months" is indicative of the kind of behavior which undermines the public's confidence in the legal profession.

In aggravation, the State Bar examiner argued that petitioner had failed to cooperate with the investigation, citing his failure to return the stipulation in a timely manner. The examiner drew parallels between this conduct and petitioner's dilatory behavior with regard to his clients. She contended that petitioner's failure to return the stipulation, and his last minute efforts to make the stipulation effective nevertheless, demonstrated that he was not rehabilitated.

On the basis of these arguments, the hearing panel found in aggravation that petitioner "was uncooperative in promptly returning telephone calls and producing documents in a timely manner in connection with the State Bar proceedings in these matters." The review department adopted this finding.

Petitioner contends that the finding of failure to cooperate with the State Bar is unsupported by the record. The hearing panel found that petitioner was not cooperative "in promptly returning telephone calls and producing documents in a timely manner." Yet the sole instance of alleged uncooperativeness in the record is his failure to sign and return the draft stipulation within the 20 days between October 7, the date he received the stipulation, and October 27, the date on which it was due in order to be effective for the disciplinary hearing. Petitioner was out of state for 10 of those 20 days and had informed the examiner that he would be absent for that period.

While petitioner could have acted more promptly in signing and returning the proposed stipulation, the delay was not extreme. Furthermore, he was not *required* to sign and return the stipulation at all. As to the hearing panel's specific finding, there is no evidence in the record that petitioner did not promptly return phone calls or "produce documents" in a timely manner.

The aggravating circumstance found by the hearing panel is not supported by the record. Accordingly, the aggravating circumstance finding should be disregarded.[12]

---

[12]In view of this court's determination that the aggravating circumstance finding must be disregarded, it is unnecessary to reach petitioner's other contentions regarding the aggravating circumstance.

Even after rejection of the finding in aggravation, petitioner has not met his burden of demonstrating that the State Bar's recommended discipline is erroneous. (See *McMorris* v. *State Bar, supra,* 35 Cal.3d at p. 84.) He stipulated that, in his representation of two clients, he failed to fulfill the tasks for which he was employed, failed to communicate with his clients, withdrew without taking steps to protect his clients' interests and without returning the clients' papers and documents, and failed to return the unearned portion of fees paid to him. In light of this record of misconduct, the recommended discipline is fully warranted.

Accordingly, it is ordered that petitioner Kenneth W. Smith be suspended from the practice of law for a period of 180 days, and that execution of such suspension be stayed upon the condition he receive 30 days actual suspension and one year of probation, make restitution to his clients and pass the Professional Responsibility Examination within his period of probation. It is further ordered that petitioner comply with the other conditions of probation stated in the review department's decision, filed on July 6, 1984.[13]

---

[13]These conditions include the filing of quarterly reports with the State Bar Court, in which petitioner shall certify that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct. If petitioner is in possession of client funds, the reports shall also include a certificate from a certified public accountant that petitioner has kept and maintained records necessary to distinguish between money received for use on behalf of a client and money received for petitioner's own account, showing money paid to and from each account, and indicating the amount of money and identified property held in trust for clients. He shall also show evidence that he maintains a client trust account, keeps permanent records showing all trust account transactions, and that there were no shortages in trust funds for the period covered by the report. Further conditions of probation include maintenance of a current address with the State Bar Court, and prompt answers to all inquiries from the State Bar Presiding Referee regarding compliance with the terms of probation.